**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------X

ANASTASIA MIGHTY,

                Plaintiff,

- against -

M.A.C. COSMETICS, INC,

                Defendants.

------------------------------------------------------------------------X

Case No.

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

ANASTASIA MIGHTY ("Plaintiff"), by and through her attorneys, PHILLIPS & ASSOCIATES, PLLC, against M.A.C. COSMETICS ("MAC") and ESTEE LAUDER, INC. ("Defendants"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

### NATURE OF THE CASE

1. This is a civil action based upon violations that Defendants committed of Plaintiff's rights guaranteed to her by: (i) the race discrimination provisions of the **Title VII of the Civil Rights Act of 1964**, as amended ("Title VII"); (ii) the retaliation provisions of **Title VII**; (iii) the race discrimination provisions of the **New York State Human Rights Law**, New York State Executive Law, § 296 *et seq.* ("NYSHRL"); (iv) the retaliation provisions of the **NYSHRL**; (v) the race discrimination provisions of the **New York City Human Rights Law**, New York City Administrative Code § 8-107 *et seq.* ("NYCHRL"); (vi) the retaliation provisions of the **NYCHRL**; and (vii) any other claim(s) that can be inferred from the facts set forth herein.

2. Despite her qualifications and fifteen-year employment history with Defendants, Defendants have failed to promote Plaintiff, while promoting equally or lesser-qualified

candidates, because Plaintiff is a Black woman.

## JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 2000(e), *et seq*.

4. The Court has supplemental jurisdiction over all state and city law claims pursuant to 28 U.S.C. §1367.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief occurred within this judicial district.

## PROCEDURAL PREREQUISITES

6. Plaintiff timely filed a Charge of Discrimination, upon which this Complaint is based, with the Equal Employment Opportunity Commission ("EEOC").

7. Plaintiff received a Notice of Right to Sue from the EEOC as to Defendant MAC, dated April 1, 2022, with respect to the instant charges of discrimination. A copy of the Notice is annexed to this Complaint.

8. Plaintiff originally filed one Charge of discrimination with the EEOC naming both MAC and its parent Corporation (ESTEE LAUDER) as Defendants as the claims against both flow from the same nucleus of facts. The EEOC inadvertently split Plaintiff's claim into two case numbers: one against Mac, and one against ESTEE LAUDER. Plaintiff expects to receive the NRTS from the EEOC as to Defendant ESTEE LAUDER imminently and will amend this Complaint to add ESTEE LAUDER AS DEFENDANT upon receipt.

9. This action against MAC is being commenced within 90 days of receipt of the Notice of Right to Sue.

## PARTIES

10. Plaintiff is a Black woman and a resident of the State of New York. At all relevant times herein, she was and is a "person" and an "employee" entitled to protection as defined by Title VII, the NYSHRL, and the NYCHRL.

11. At all relevant times herein, Defendant MAC was and is a New York corporation, with a principal place of business located at 689 5th Avenue, New York, NY 10022.

12. At all relevant times herein, ESTEE LAUDER was and is a New York corporation, and is the parent corporation of Defendant MAC. Plaintiff expects ESTEE LAUDER to be added as a defendant in this matter upon receipt of the Notice of Right to Sue from the EEOC.

## MATERIAL FACTS

13. Defendant MAC is a cosmetics manufacturer and retailer that operates stores and makeup counters throughout the United States and is a subsidiary of Defendant ESTEE LAUDER.

14. Plaintiff has been employed with Defendants since January 2006 and was initially hired as a Make-up Artist, earning about $20 per hour. Since then, Plaintiff has occupied a series of positions through promotions at various locations of Defendant MAC and is currently employed at Defendant MAC's Store at the Kings Plaza Mall in Brooklyn as a Manager earning approximately $73,000 annually.

15. Although Plaintiff worked for Defendants for fifteen years and specifically trained for seven years for the Field Sales Executive position, Defendants failed to promote Plaintiff despite her credentials, experience, and positive work performance.

16. In 2013, during Plaintiff's employment as Defendant MAC's Counter Manager at the Macy's store in Kings Plaza Mall, Plaintiff expressed her desire to become a Senior Retail Manager ("SRM") to her then direct supervisors, Layla Zangoui ("Zangoui"), Manager of Retail Operation (MRO), and Marlo Williams ("Williams"), Regional Corporate Trainer.

3

17. Zangoui informed Plaintiff that there were certain successes and trainings required to be considered for such a role with Defendants and she would succession plan with Plaintiff and get her ready for when this position would become available.

18. In 2013, Plaintiff received a "Highly Effective" on her year-end review.

19. In or about July 2014, Plaintiff had her first conversation with Lusi Smith ("Smith"), Field Executive Director and Zangoui's direct supervisor. Smith selects candidates for executive positions with Defendant MAC.

20. During a regional market tour with Smith, Plaintiff expressed her interest in the Senior Retail Manager position, shared her accomplishments and what Plaintiff had been doing to prepare for the role. As Plaintiff highlighted her assignments, Smith gave Plaintiff her counters results and then informed Plaintiff that she would need "MAC store experience."

21. Smith advised Plaintiff to apply for a position at the new MAC Union Square store scheduled to open in November 2014. Smith informed Plaintiff that she would have Katie Bakka-Fresco ("Bakka-Fresco"), Manager of Retail Operation for that region, work with Plaintiff to get her ready for the Senior Retail Manager position. Bakka-Fresco is a white woman.

22. Plaintiff was later offered the Assistant Store Manager position at the MAC Union Square, as opposed to the Store Manager position for which she and Smith had originally discussed with Plaintiff.

23. In November 2014, Plaintiff began working as Assistant Store Manager at Defendant MAC's Union Square store under Store Manager, Monica Garcia ("Garcia").

24. Although she had accumulated a number of accomplishments, after three months in the role, Plaintiff noticed that there was no plan of action put into place for her professional development, as previously promised. Plaintiff then requested a meeting with Smith to

4

revisit their previous conversation in July 2014 regarding a blueprint to achieve her goal of attaining a Senior Retail Manager position.

25. During this conversation, Smith and Plaintiff again discussed steps she could take to get promoted and a realistic timeline for that promotion.

26. Immediately following her conversation with Smith, Bakka-Fresco's and Garcia's behavior towards Plaintiff immediately changed in a retaliatory manner. Both Bakka-Fresco and Garcia took exception to Plaintiff's promotion request.

27. In order to discredit Plaintiff's performance and not promote Plaintiff, Garcia started to coerce artists to speak against Plaintiff's work. For example, Garcia coerced the artists to state Plaintiff thwarted the artists from facilitating their weekly meeting quotas in the store, which was untrue.

28. When Plaintiff brought both artists and Garcia together to discuss these accusation, both artists denied saying Plaintiff thwarted their work.

29. Aware of Plaintiff's treatment by Garcia and Bakka-Fresco at the Union Square Store, and because Plaintiff was an excellent performer deserving of promotion, Jessica Gonzalez ("Gonzalez"), Point-Person Executive, offered Plaintiff an opportunity to interview for the Store Manager position at Defendant MAC's Harlem Store.

30. On March 16, 2015, Plaintiff began working as a Store Manager at Defendant MAC's Harlem Store. Plaintiff excelled in the role and participated in Defendant MAC's Senior Retail Manager Preparatory Program.

31. Plaintiff partnered with Jeanine Vespucci ("Vespucci"), Manager of Retail Operation Long Island, and went through the interview process for a Senior Retail Manager position. Plaintiff immediately implemented the feedback from that interview into the Harlem Store where she still worked. Vespucci, who appeared to be impressed with Plaintiff's business

5

plan and innovative training ideas, requested that Plaintiff train her managers in Long Island.

32. In October 2015, Plaintiff's received "Highly Effective" on her year-end review.

33. A few months later, a Senior Retail Manager position became available in Long Island. Plaintiff applied for the position and interviewed for it on May 31, 2016. Despite her experience and qualifications, including her extensive knowledge of the Long Island market, Plaintiff was not offered the position. The feedback given to Plaintiff by Vespucci was that Smith made the final decision and she decided to go with another candidate—a white woman with less managerial experience than Plaintiff.

34. A week after Garcia arrived at the Harlem Store, she again began bullying Plaintiff. Upon information and belief, Garcia coerced other employees at the Harlem Store to say they were unhappy at the location due to Plaintiff's management, which again was untrue.

35. Two weeks later, Plaintiff was summoned to Defendant MAC's Union Square Store for a meeting with Garcia and Bakka-Fresco. During this meeting, Garcia claimed that "the team" at the Harlem Store was unhappy and that numerous issues needed to be addressed. When Plaintiff asked to sit down with Garcia and the entire team to discuss the issues, Garcia claimed that this matter had been brought to her in confidence and the complainants could not be disclosed. Garcia explained that Plaintiff should just "handle it" and provided no meaningful feedback or opportunity to rectify the situation.

36. When Plaintiff returned to the Harlem Store, Plaintiff had met with the team to find out what needed to be addressed. However, aside from a minor tweak (a request for extra makeup brushes which Plaintiff provided) there were no major issues that needed to be addressed as Garcia had previously reported.

37. Two weeks later, Plaintiff was called back to Defendant MAC's Union Square Store and

further baseless complaints were lodged against her. Specifically, an unknown complainant alleged that Plaintiff made her team cry during their "touch base" meetings. This was blatantly untrue, and when Plaintiff asked Garcia to pull camera footage to prove that no such thing had happened in the Harlem store, Garcia conveniently declined.

38. Plaintiff then asked for another meeting with the team and/or the individual artist that issued the complaint. Again, Garcia claimed she could not disclose any information regarding who made the accusation. Contrary to company policy and her job description, Garcia refused to facilitate resolution of the alleged charges against Plaintiff.

39. A week later, Janelle Lindo ("Lindo"), Assistant Store Manager, closed the store early without permission and acted disrespectfully to the makeup artists. However, Garcia attempted to write up Plaintiff for Lindo's behavior.

40. Two weeks later, Garcia called Plaintiff back to Defendant MAC's Union Square Store for the third time to take disciplinary action against Plaintiff. Bakka-Fresco attended the meeting by telephone while Garcia was present with Plaintiff in the office.

41. During this meeting Plaintiff lodged a discrimination complaint. Specifically, Plaintiff recapped their previous two meetings where they had wrongfully accused her and expressed her belief that they were attempting to discredit her in order to fire her and/or not promote her on account of her race.

42. Plaintiff informed both Garcia and Bakka-Fresco that she intended to escalate her complaint to Human Resources Manager Christine Lin.

43. Plaintiff subsequently had two meetings with Lin to discuss her discrimination complaint, where she presented her performance history and dispelled the accusations that were made against her. Plaintiff enumerated the falsehoods in the write up Garcia gave Plaintiff.

44. On July 14, 2016, Plaintiff and Lin had another meeting to discuss the false accusations

7

made by Garcia and Plaintiff's discrimination complaint. At the end of the conversation with Lin, Plaintiff was cleared of all infractions but did not resolve the discriminatory failure to promote complaint Plaintiff lodged.

45. A few months later, Gonzalez returned to the Harlem Store from a temporary assignment.

46. A position as Senior Retail Manager again became available in one of Defendant MAC's New York City locations. Plaintiff applied and interviewed for the role with Denise Zavala. Once again, Plaintiff was denied the position. Plaintiff learned that Garcia had instead been offered the role.

47. After a restructuring of the company, in or around November 17, a Manager position became available at Defendant MAC's Kings Plaza Store. Plaintiff then transitioned into that role.

48. Upon her arrival at the Kings Plaza Store on December 1, 2017, Gonzalez and Plaintiff had a formal "touch base" meeting where they outlined the expectations and goals for the Kings Plaza Store. During the conversation, Plaintiff made clear her continued interest in the Field Executive role and asked Gonzalez to work with her to strengthen her skills for the desired position. Plaintiff also asked for ongoing communication regarding her performance and for Gonzalez to share this information with Smith.

49. Plaintiff expressed her concern to Gonzalez that, despite fulfilling all required tasks and trainings, she had been overlooked time and time again for promotions to higher-level positions when they became available. Gonzalez reassured Plaintiff that she would have weekly conversations regarding the Kings Plaza Store and share information about the results she achieved with Smith.

50. In the past seven years Plaintiff applied for this role 17 teams when the position became available. For nine of those seventeen positions, Plaintiff did not receive an interview or

any communication after she applied.

51. On July 20, 2019, after the company underwent another restructure, a Field Sales Executive position for a New York City location became available and Plaintiff applied for it. Plaintiff went through two rounds of interviews for the position, but it was ultimately offered to Roberto Wilson ("Wilson"). Yet again, despite her experience and qualifications, Plaintiff was overlooked for the position.

52. Upon Wilson becoming her direct supervisor, Plaintiff met with him to discuss her readiness for the role of Field Sales Executive. Wilson commended Plaintiff on her strengths and discussed matters that he wanted Plaintiff to work on. Wilson suggested that Plaintiff take a public speaking course.[1]

53. Wilson continuously stated he was impressed with Plaintiff's achievements during subsequent "touch base" sessions with Wilson, he informed Plaintiff that he was having weekly conversations with Smith promoting Plaintiff to her desired and well deserved role.

54. On July 20, 2019, a Field Sales Executive position with Defendant MAC for the New Jersey market became available.

55. Plaintiff applied for the position and interviewed with Smith. Most of the interview was spent discussing the previous allegations made by Bakka-Fresco and Garcia against Plaintiff. Smith later sent Plaintiff an email confirming that she had selected another candidate for the position and offered to provide Plaintiff with additional feedback upon her return from vacation. Plaintiff never received that feedback.

56. After Plaintiff was denied for the New Jersey position, Wilson created an action plan for Plaintiff and gave her "stretch assignments" designed to help Plaintiff excel within the

---

[1] Plaintiff took the initiative to enroll in an Oral Communications for Professionals course at Baruch College in February 2020.

9

areas where Plaintiff could improve. Wilson assured Plaintiff that Smith was aware of all that Plaintiff was working on and all the results Plaintiff was achieving.

57. A few weeks later, during a weekly "touch base" meeting with Wilson, Wilson informed Plaintiff that a temporary Field Executive position might be opening to cover an employee's maternity leave. Wilson stated that, in conversations with Smith, he had suggested Plaintiff for the role. In addition to the temporary position due to maternity leave, two additional temporary Field Sales Executive positions became available due to FMLA and disability leave.

58. In the end, Plaintiff was not selected for any of these positions.

59. On November 6, 2020, Plaintiff wrote a letter to Tiffany Whitford ("Whitford"), Vice President, Free Standing Stores (North America) for Defendant MAC, asking about the three Field Sales Executive positions open due to leaves of absence and why Plaintiff was not considered for the various opportunities.

60. On November 11, 2020, Whitford responded "I have asked Charmaine Bigby to coordinate a meeting for us to address your concerns and questions." On November 17, 2020, Plaintiff had a conference call with Charmaine Bigby ("Bigby"), HR Manager, Whitford and Smith.

61. During the call, Plaintiff was informed that she had not been considered for the positions for "budgetary reasons." Plaintiff responded by stating that, had the opportunity been presented to her as a lateral move or a stretch assignment, she would have accepted it without additional compensation, in order to gain more experience.

62. Plaintiff also discussed inconsistencies in the succession planning program and that she had been overlooked for senior roles while she was already doing the work at a senior level. Smith and Whitford assured Plaintiff that she would not be overlooked for a promotion again.

63. Whitford asked Plaintiff to give her six months to help Plaintiff reach her goal of a promotion. Nevertheless, to date, Plaintiff has yet to achieve the role of Field Sales Executive, nearly a year later.

64. Plaintiff's requests for "growth within the retail population" and implementation of a "succession planning program" for store managers were ultimately ignored.

65. From January 2021 through March 2021, Smith paired Plaintiff with Gary Tracy ("Tracy"), Temporary Field Executive Manager, to host segments of weekly conference calls for the region. Plaintiff shared innovative methods to leverage the Eventbrite.com media channel to help enhance the store's ability to host virtual classes. Plaintiff also conducted weekly conference calls that highlighted the performance of stores and addressed company-wide initiatives, focuses and targeted goals.

66. Tracy and Smith recommended that Plaintiff join the Field Sales Executive team from Texas to create the hiring and onboarding processes for new and existing managers. As her responsibilities increased, Plaintiff believed she was finally heading in the right direction with her development.

67. In April 2020, after her father became ill, Plaintiff was forced to take a few weeks of FMLA leave to care for him. Upon her return, Plaintiff received a "Successful" on her year-end review from Tracy.

68. In July 2021, Defendant ESTEE LAUDER went through a reorganization restructuring in which a number of positions within the company became available as a result.

69. Upon learning of four available positions aligned with her skill set, Plaintiff reached out to Bigby to express her interest in posting for these positions and Bigby advised her to apply without delay.

70. Shortly thereafter, Plaintiff was assigned to report to a new Field Sales Executive, Elinore

11

Elmoznino ("Elmoznino").

71. During Plaintiff's first "touch base" meeting with Elmoznino, she asked Plaintiff about the positions for which she had previously applied. Plaintiff informed her that Plaintiff had not landed interviews with several brands, but she remained hopeful. Elmoznino asked if Plaintiff was applying for a position where Bakka-Fresco was the Director and Plaintiff replied that she would not apply because Bakka-Fresco was not fond of Plaintiff and would not evaluate her fairly.

72. Elmoznino went on to ask if she could give Plaintiff "some real feedback," and then said, "Ana you need to work on your emotional intelligence and professional maturity in order to attain the position of field sales executive. No one is questioning your ability to do the job. You just need to work on these two things."

73. Plaintiff was taken aback by the feedback since Elmoznino had only occupied her role for five days and had not previously worked with Plaintiff. Plaintiff was left feeling defeated, undervalued, and unappreciated.

74. Plaintiff has worked over fifteen years for Defendants and despite her credentials, experience and performance, Defendants failed to promote her. Plaintiff has been a victim of racial bias and discrimination. Plaintiff is dejected that, even after giving much of herself to her employment with Defendants, they have failed to elevate her to critical roles while elevating many of her counterparts who are not Black women.

75. As stated above, Plaintiff applied for and was qualified for several promotions with Defendants and was nonetheless rejected for those positions despite her qualifications. Meanwhile, other equally or less qualified and similarly situated employees who were not Black women were routinely favored and promoted.

76. Defendants had no legitimate business reason for failing to promote Plaintiff. Defendants

failed to promote Plaintiff solely because she is a Black woman.

77. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

78. As a result of Defendants' actions, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

79. As a result of Defendants' actions Plaintiff was constructively discharged in December 2021.

80. Additionally, as a result of Defendants' discriminatory treatment, Plaintiff has suffered pecuniary loss, severe emotional distress, and physical ailments.

81. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

82. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands punitive damages as against Defendants.

## FIRST CAUSE OF ACTION
*Race and Sex Discrimination in Violation of Title VII*

83. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

84. 42 U.S.C. § 2000e-2(a)(1), states in relevant part:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's **race**, color, religion, **sex**, or national origin[.] (emphasis added)

85. As described above, Defendant discriminated against Plaintiff on the basis of her race plus sex, in violation of Title VII, by creating, fostering, condoning, accepting, ratifying, and/or

negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment and subjecting Plaintiff to disparate treatment based on her race plus sex.

86. As a result of Defendants' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

87. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
*Retaliation in Violation of Title VII*

88. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

89. 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> [T]o . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

90. As described above, Plaintiff engaged in protected activities, including making internal complaints regarding discrimination based on Plaintiff's race plus sex.

91. As described above, after Plaintiff engaged in activity protected by Title VII, Defendants took adverse actions against Plaintiff by, *inter alia*, writing her up, that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

92. As a result of Defendants' retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

93. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

**THIRD CAUSE OF ACTION**
*Race and Sex Discrimination in Violation of the NYSHRL*

94. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

95. Executive Law § 296(1)(a) provides that:

> It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, **race**, creed, color, national origin, sexual orientation, military status, **sex**, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment. (emphasis added)

96. As described above, Defendant discriminated against Plaintiff on the basis of her race plus sex, in violation of NYSHRL, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, harassment and subjecting Plaintiff to disparate treatment based on her race plus sex.

97. As a result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL,

Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

98. As a result of Defendants' unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

99. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

**FOURTH CAUSE OF ACTION**
*Retaliation in Violation of the NYSHRL*

100. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

101. Executive Law § 296(7) provides that:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she filed a complaint, testified, or assisted in any proceeding under this article.

102. As described above, Plaintiff engaged in protected activities, including making internal complaints regarding discrimination based on Plaintiff's race plus sex.

103. As described above, after Plaintiff engaged in activity protected by the NYSHRL, Defendants took adverse actions against Plaintiff by, *inter alia*, writing her up, that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

104. As a result of Defendants' retaliatory conduct in violation of the NYSHRL, Plaintiff has

suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

### FIFTH CAUSE OF ACTION
*Race and Sex Discrimination in Violation of NYCHRL*

105. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

106. The Administrative Code of City of New York § 8-107(1)(a) provides that

> It shall be an unlawful discriminatory practice: for an employer or an employee or agent thereof, because of the actual or perceived age, **race**, creed, color, national origin, **gender**, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or alienage or citizenship status of any person... to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment. (emphasis added)

107. As described above, Defendant discriminated against Plaintiff on the basis of her race plus gender in violation of the NYCHRL by, including but not limited to, subjecting her to disparate working conditions, and denying her the opportunity to work in an employment setting free of unlawful discrimination and harassment.

108. As a result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

109. As a result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress,

including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

110. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

### SIXTH CAUSE OF ACTION AGAINST DEFENDANT
*Retaliation in Violation of NYCHRL*

111. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

112. The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice for an employer "to retaliate or discriminate in any manner against any person because such person has opposed any practices forbidden under this chapter…."

113. As described above, Plaintiff engaged in protected activities, including making internal complaints regarding discrimination based on Plaintiff's race plus sex.

114. As described above, after Plaintiff engaged in activity protected by the NYCHRL, Defendants took adverse actions against Plaintiff by, *inter alia*, writing her up, that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

115. As a result of Defendants' retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

116. Defendants' unlawful discriminatory actions constitute violations of the NYCHRL that amount to willful or wanton negligence, recklessness, and involve a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages.

## JURY DEMAND

117. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII, the NYSHRL, and the NYCHRL and, in that Defendants discriminated against Plaintiff on the basis of her race plus sex and retaliated against Plaintiff for complaining about this discrimination;

B. Restraining Defendants from any retaliation against Plaintiff for participating in any form in this litigation;

C. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination, and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

D. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

G.     Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: Garden City, New York
June 15, 2022

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

*/s/ Joshua M. Friedman*
Joshua M. Friedman, Esq.
585 Stewart Avenue, Suite 410
Garden City, New York 11530
T: (212) 248-7431
F: (212) 901-2107
jfriedman@tpglaws.com